**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

—————————————————————— X

ROBERT WILLIAMS,

      Plaintiff

      V.

CITY UNIVERSITY OF NEW YORK,

BROOKLYN COLLEGE

      Defendant

—————————————————————— X



**JURY TRIAL DEMANDED**

AMON, CH.J.

CV 13 - 2651

Plaintiff Robert Williams's *pro se* ("Plaintiff", "me" or "I"), by and through this Complaint against City University of New York, Brooklyn College ("Defendant" or "College"), hereby alleges as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages to redress the defendant City University of New York, Brooklyn College's unlawful education practices against Plaintiff, including Defendant's retaliation in violation of Title V1 of The Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq..

2. Plaintiff was subject to unlawful retaliation for complaining about unlawful racial discrimination by the Defendant.

3. Defendant's conduct was intentional, knowing, malicious, willful and wanton and /or showed reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial damages, permanent harm to his academic, professional and personal reputations, and mental anguish and emotional distress.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title V1. The court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful education practices alleged herein, occurred in this district.

## PARTIES

6. Plaintiff Robert Williams resides at P.O. Box 220 Williamsbridge Station Bronx, New York 10467. At all relevant times, Plaintiff met the definition of a "student" under all applicable statues.

7. Defendant City University of New York, Brooklyn College is a federally funded university residing at 2900 Bedford Ave. Brooklyn, New York. At all

relevant times, Defendant has met the definition of a "college" under all applicable statues.

## PROCEDURAL REQUIREMENTS

8. There are no Statuary prerequisites to Plaintiff's Title V1 and retaliation claims.

9. Any and all prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

10. I am a graduate student at Brooklyn College that was subject to unlawful retaliation during the spring 2009 Semester for filing an internal grievance alleging race discrimination on or around March 1, 2009 and for filing an appeal to the college's Faculty Council Committee on Graduate Admissions and Standards, alleging that the Compliance office's decision not to change my grade was discriminatory, based on race, on or around April 13, 2009.

11. Therefore, I was engaged in protected activity.

12. After filing my March, 2009 grievance and my April, 2009 grievance directly to the college, the college responded to my concerns. Although, the college failed to address my concerns in accordance to disseminated school policy, their response reflects they had knowledge of my protected activity.

13. On or around fourteen days (14) after filing my second grievance I was subject to adverse treatment in my pursuit of education. Among other things, I

3

was denied registration and subjected to unofficial school policy and false practices.

14. During the previous semester my Grade Point Average (GPA) fell below the preferred college GPA of 3.0 which placed me on academic probation, due to being marginalized and discrimination.

15. The disseminated school policy that governed my tenure as a graduate student on academic probation was not followed by the college. Moreover, the college created an unofficial school practice that cannot be supported by the language of the policy.

16. Upon information and belief when there is ambiguity or a policy (contract) is silent on an issue by default this discrepancy goes in favor of the non-drafter of the policy (contract).

17. Once a student is on academic probation, the student is allowed to take up to nine (9) credits to help raise his/her GPA or make academic progress.

18. The policy is and states it is "Non-punitive" and is only designed to assist the student and not create hardship and obstacles in lieu of completing the course requirements.

19. A student on academic probation receives a probation stop (P-stop) which bars a student from registering for classes.

4

20. The policy states the procedures that are in effect in order to lift a P-stop, a student on academic probation must meet with the Graduate Deputy/ Program Head to develop a plan for raising his/her GPA.

21. The Graduate Deputy/ Program Head then must submit the plan to the coordinator.

22. Once the Coordinator approves the plan, the p-stop is temporarily lifted so that the student may register for classes for the following semester.

23. The P-stop is then re-imposed, and a student must increase his /her GPA to 3.0 within the next 9 credits.

24. A P-stop remains in place for future registration until the student is no longer on academic probation, at which point the P-stop is permanently lifted.

25. In Short, I was only allowed to take six (6) out of the nine (9) credits to help raise my GPA after submitting my plan of action to raise my GPA.

26. Moreover, I was not supposed to be subjected to any interference or denial of registration to complete the nine credit threshold (contract).

27. For example, telling a student that they have to wait for their final grades to post is unofficial school policy, ultimately denying me to register on my appointed registration date which, is scheduled with all graduate students whether they are on academic probation or not.

28. Instead of being treated as a student accordingly in this position, I was subject to arbitrary, capricious policies that were motivated by unlawful retaliation for complaining about what I perceived to be unlawful discrimination.

29. The P-stop does not disseminate that the coordinator can wait for the grades to post to decide if she is going to lift the stop. In fact, the Coordinator has no jurisdiction as a decision maker whether or not a student will be dismissed for what may be perceived as the student not making academic progress.

30. The policy is clear that the Coordinator must approve the plan of action before the final grades are posted so that the student can register in a timely manner. In this instance, on his appointed time to register for classes and to secure the courses that the students need to complete the program.

31. The P-stop does not disseminate that the student has to submit a second plan of action. Moreover, it cannot be inferred that a student has to submit a second plan of action.

32. Since I was involved in protected activity the college should or should have known they had a duty and obligation to follow the language and directives of the policy in order not to be exposed of being liable of unlawful retaliation.

33. Based on information and belief, I was the only student out of three that had to submit a second plan of action. Notwithstanding, the other two students were not involved in protected activity and was allowed to register at their appointed times.

34. On or around April 1, 2009, The College scheduled me to register for the fall semester on or around April 28, 2009.

35. Around one week prior to April 28, 2009, I met with the Education Deputy Head Professor Steven Phillips, who approved my plan of action and forwarded it to the Graduate Coordinator Anselma Rodriquez in accordance to disseminated policy.

36. Upon receipt of the plan of action Anselma Rodriquez must approve this plan of action to deactivate the P-stop before the student's registration appointment. However, she failed to do so accordingly.

37. Instead of allowing me to register, at least for the balance of credits, to help get me off of academic probation, she subjected to unlawful retaliation, by claiming that she is waiting for my final grades to post before she decides if she is going to lift the stop or not.

38. Moreover, this unofficial school policy or practice is irrefutably in contradiction to the disseminated policy that clearly states that she is to approve the plan of action, so that that I can register. Moreover, no language of the policy states that the coordinator has the luxury, at my expense and rights, that she can administer her inappropriate action(s).

39. In addition, Ms. Rodriquez does not have the authority to determine if a student will be dismissed from the program. This decision is made by the administrators computer generated formula in the Registrar's Department.

40. In essence, waiting for the final grades to post serves no purpose especially since a student is allowed to take 9 credits pursuant a current plan of action.

41. Simultaneously, on or around May 30, 2009, my final grades posted and my GPA went from 2.4 to on or around 2.67 demonstrating academic progress based on 6 out of 9 attempted credits.

42. Moreover, after the final grades posted the Registrar's office supported and acknowledged this progress simply, because I was still a student. Additionally, I still had 3 credits to help raise the GPA.

43. However, on or around June 14, 2009, I received a letter from Ms. Rodriquez who falsely claimed I have not made academic progress.

44. Upon information and belief, this letter was sent to support her unlawful retaliation so that she did not have to lift the stop in an ongoing effort to abandon me.

45. Upon information and belief, this abandonment can be inferred simply because Ms. Rodriquez never lifted the stop at any time since the posting of the final grades and prior to the start of the fall 2009 semester, so that I can register for classes.

46. Upon information and belief, Ms. Rodriquez claimed she advised me that I had to submit another plan of action which is not true, however, I believe this supports that she did not follow school policy because students do not have to submit a second plan of action.

8

47. Upon information and belief students who do not complain about unlawful discrimination do not have to submit a second plan of action and are allowed to register without any interference.

48. Because of the stop never being lifted and classes were to start around August 24, 2009, on or around August 17, 2009 I had to seek the assistance from the Acting Graduate Dean to be able to register.

49. The Acting Dean treated me with dignity, respect, professionally and in accordance to the circumstances.

50. Upon information and belief, the acting dean did not have my records of me submitting a plan of action, due to this being in Ms. Rodriquez possession.

51. Since the policy calls for a plan of action, the Acting Graduate Dean kindly asked me to submit a plan of action, simply because she cannot lift the stop without having record of my plan of action.

52. Moreover, once she approved the plan of action the stop was lifted and I was able to register for classes in about an hour.

53. Once I registered for classes she re-imposed the P-stop.

54. Simultaneously, what the Acting Dean did was simply what Ms. Rodriquez was supposed to do from the very beginning and in accordance to the language and directives of the disseminated policy for all students protected activity or not.

55. Instead of complying with the language and directives of school policy Ms. Rodriquez intentionally chose to ignore the policy in an effort to strip away my role and duties of a student by punishing me for complaining about unlawful discrimination via unlawful retaliation.

56. Pursuant the above mentioned allegations (1-55) there are a causal connection between the protected activity and the adverse actions.

57. In further support of this complaint and without becoming somewhat repetitive the plaintiff has attached a letter Dated October 30, 2009 from the United States Department of Education Office For Civil Rights ("OCR") addressing these allegations to demonstrate that the allegations raise a right to relief above the speculative level and be facially plausible and are actionable. (See attached Document labeled 1).

58. In further support of this complaint I have attached a Dated November 7, 2009 demonstrating concerns that the legal and factual analysis in ("OCR") determination is not correct. (See attached Document # 2).

59. In further support of this complaint I have attached the response by "OCR" on my request for reconsideration Dated. October 5, 2010. (See attached Document # 3).

60. Although the determination does not favor the plaintiff, it is important to note that the OCR concluded that the college had legitimate non-retaliatory reasons for her actions. Their determination never gave plaintiff the opportunity

during the investigation to demonstrate and present evidence that their non-discriminatory and non-retaliatory business rational was a pretext to hide unlawful retaliation. This is the next legal step the federal courts utilize once a business decision rational has been accepted.

61. In essence the legal standard was not applied properly to determine if retaliation occurred.

62. Furthermore, the plaintiff appealed this decision to the Deputy Asst. Secretary for Education Dated December 1, 2010. OCR appeals are not reviewed De Novo however, the plaintiff attempted to have the original determination reversed. Moreover, this document also supports the plaintiff's allegations in this complaint. (See attached Document Labeled 4).

63. On March 26, 2013 the Deputy Assistant Secretary for Enforcement denied the appeal pursuant that the New York Office was consistent with the laws and regulations enforced by OCR. More importantly, there is no mention concerning the facts about the case.

## CAUSE OF ACTION

### (Retaliation in violation of Title V1)

64. Plaintiff herby repeats and re-alleges each and every allegation in paragraphs 1-63, inclusive, as if fully set forth herein.

65. Defendant has retaliated against Plaintiff in violation of Title V1 42 U.S.C. § 2000d, by denying Plaintiff equal terms and conditions of education, including

but limited to , unlawfully denying Plaintiff the opportunity to study in a setting free of unlawful retaliation.

66. Plaintiff engaged in protected activity, Defendant had knowledge of protected activity, defendant subjected Plaintiff to adverse actions in pursuit of his education and there is a casual connection between protected activity and Plaintiff's adverse treatment, demonstrating a retaliatory motive.

67. Defendants retaliatory would dissuade a reasonable student from making or supporting a complaint of discrimination.

68. As a direct and proximate result of Defendant's unlawful retaliation conduct in violation of Title V1, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages.

69. As a direct and proximate result of Defendants unlawful retaliation conduct in violation of Title V1, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, loss of self-esteem and self-confidence and emotional pain and suffering and all the other elements of the garden variety the court recognizes for which Plaintiff is entitled to an award of compensatory damages.

70. Defendant's unlawful retaliation actions constitute intentional, malicious, willful and wanton violations of Title V1 for which Plaintiff is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

12

**WHEREFORE,** Plaintiff prays that the Court enter judgment in Plaintiff's favor and against defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing defendant to place Plaintiff in the position he would have occupied but for retaliatory treatment and otherwise unlawful conduct, including reinstatement to his position, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful education practices are eliminated and do not continue to affect Plaintiff's academic process and personal life;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, inconvenience, emotional pain and suffering, emotional distress and the other garden variety injuries the court recognizes;

F.  An award of damages for any and all other monetary and/or non-monetary

    losses suffered by Plaintiff in an amount to be determined at trial, plus

    prejudgment interest;

G.  An award of punitive damages;

H.  Such other and further relief as the Court may deem just and proper

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages

stated herein.

Dated: Bronx, New York

April 25, 2013

                    Respectfully Submitted

                    Robert Williams

                    718 547-6098

                    Williamsbridge Station

                    P.O. Box 220

                    Bronx, NY 10467

14

Document 1

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

October 30, 2009

Robert Williams
624 East 222nd Street
Apartment 6A
Bronx, New York 10467

Re:   Case No. 02-09-2088
      City University of New York, Brooklyn College

Dear Mr. Williams:

This letter is to notify you of the determination made by the U.S. Department of Education, New York Office for Civil Rights (OCR) regarding the above-referenced complaint you filed against the City University of New York, Brooklyn College. You alleged that the College's Coordinator for Graduate Studies (Coordinator) did not permit you to register for classes for the fall 2009 semester, in retaliation for your filing an internal grievance alleging race discrimination, in March 2009. Hereinafter, you will be referred to as "the complainant."

OCR is responsible for enforcing Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and its implementing regulation at 34 C.F.R. Part 100, which prohibit discrimination on the bases of race, color and national origin in programs and activities receiving financial assistance from the Department. The College is a recipient of financial assistance from the Department and is a public postsecondary educational institution. Therefore, OCR has jurisdictional authority to investigate this complaint under Title VI.

Additionally, 34 C.F.R. § 100.7(e) of the regulation implementing Title VI provides that:

> No recipient or other person shall intimidate, threaten coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by regulations enforced by OCR or because one has made a complaint, testified, assisted or participated in any manner in an investigation, proceedings or hearing held in connection with a complaint.

In its investigation, OCR interviewed the complainant and the College's Coordinator for Graduate Studies. OCR also reviewed documentation the complainant and the College submitted. OCR made the following determinations.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

The complainant alleged that the Coordinator did not permit him to register for classes for the fall 2009 semester, in retaliation for his filing of an internal grievance with the College's Office of Affirmative Action and Diversity and Compliance (the Compliance Office). In his grievance filed with the Compliance Office, the complainant alleged that the Sociology Department's Committee on Grade Appeals (the Committee) discriminated against him, on the basis of his race, when it denied his grade appeal.

In analyzing whether retaliation occurred, OCR must first determine whether: (1) the complainant engaged in a protected activity; (2) the recipient was aware of the complainant's protected activity; (3) the complainant suffered an adverse action contemporaneous with, or subsequent to, the recipient's learning of the complainant's involvement in the protected activity; and (4) there is a causal connection between the protected activity and the adverse action from which a retaliatory motivation reasonably may be inferred. When there is evidence of all four elements, OCR then determines whether the recipient has a legitimate, non-retaliatory reason for the challenged action or whether the reason adduced by the recipient is a pretext to hide its retaliatory motivation.

OCR determined that the complainant engaged in a protected activity when, on or about March 1, 2009, he filed an internal complaint of racial discrimination against the Committee with the Compliance Office. The complainant also engaged in protected activity when, on April 13, 2009, he appealed to the College's Faculty Council Committee on Graduate Admissions and Standards (the Council), alleging that the Compliance Office's decision not to change his grade was discriminatory based on his race. OCR determined that the College was aware of the complainant's protected activities.[1]

OCR determined that at the end of the fall 2008 semester, the complainant's grade point average (GPA) fell below 3.0. Pursuant to the College's Academic Requirements and Procedures (the Procedures), the College placed the complainant on academic probation, which resulted in the automatic imposition of a probation stop (P-stop). The P-stop barred the complainant from registering for classes.

The Procedures state that in order to lift a P-stop, a student on probation must meet with the Graduate Deputy/Program Head to develop a plan for raising his or her GPA. The Graduate Deputy/Program Head then submits the plan to the Coordinator. Once the Coordinator approves the plan, the P-stop is temporarily lifted so that the student may register for classes for the following semester. The P-stop is then re-imposed, and a student must increase his or her GPA to 3.0 within the next 9 credits. A P-stop remains in place for future registration until the student is no longer on academic probation, at which point the P-stop is permanently lifted.

OCR determined that pursuant to the Procedures, the complainant submitted a plan for the spring 2009 semester, which was approved by the Coordinator. The complainant was granted permission to register for 6 credits for the spring 2009 semester. OCR determined that on or

---

[1] The Coordinator acknowledged that she was aware of the complainant's initial grievance with the Committee; however, she stated that she was unaware that the complainant subsequently filed an appeal with the Council.

about April 28, 2009, the complainant asked the Coordinator for permission to register for classes for the fall 2009 semester. OCR determined that in accordance with the Procedures, the Coordinator advised the complainant that he could not register until his final grades for the 6 credits he took during spring 2009 were available to demonstrate that he could raise his GPA to above 3.0. Further, the Coordinator advised the complainant that he would have to submit a new plan for raising his GPA, in accordance with the Procedures. OCR determined that the complainant's spring 2009 grades did not lift the complainant above a 3.0 GPA. OCR further determined that in August 2009, the complainant met with his academic advisor to develop a new plan for raising his GPA. The advisor submitted the plan to the Office of the Graduate Dean, and the Acting Graduate Dean approved it. OCR determined that once the Coordinator received the approved plan from the Acting Graduate Dean, she temporarily lifted the P-stop to permit the complainant to register for classes for the fall 2009 semester. OCR determined that the Coordinator's treatment of the complainant was consistent with her treatment of three similarly situated students in the complainant's program.[2]

Based on the above, OCR determined that the College proffered a legitimate, non-retaliatory reason for its actions, namely that its procedures precluded a student under a P-stop from registering for courses without first demonstrating sufficient academic progress toward raising his or her GPA above 3.0, and submitting a new plan for doing so. Further, OCR determined that this reason was not pretextual. OCR determined that the Coordinator acted in accordance with the College's procedures. Therefore, OCR determined that the evidence was insufficient to substantiate the complainant's allegation that the Coordinator denied the complainant permission to register for the fall 2009 semester, in retaliation for his filing an internal grievance alleging race discrimination. Accordingly, OCR will take no further action with respect to this allegation, and is closing this complaint as of the date of this letter.

This concludes OCR's consideration of this complaint. This letter is not intended, nor should it be construed, to cover any issues regarding the College's compliance with Title VI that may exist, but are not discussed herein. This letter is intended to address this individual OCR case. Letters of findings contain fact-specific investigative findings and dispositions of individual cases. Letters of findings are not formal statements of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

It is unlawful to harass or intimidate an individual who has filed a complaint or participated in actions to secure protected rights. If this should occur, you may file a separate complaint with OCR alleging such harassment or intimidation.

Under the Freedom of Information Act, 5 U.S.C. § 552, it may be necessary to release this letter and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect to the extent provided by law, personally identifiable information that if released, could constitute an unwarranted invasion of personal privacy.

---

[2] Two of the three students submitted plans to raise their GPAs above 3.0, and were subsequently permitted to register for classes for the fall 2009 semester.

If you have any questions regarding OCR's determination, please contact Michael Goldberg, Senior Equal Opportunity Specialist, at (646) 428-3817 or at Michael.Goldberg@ed.gov; John Collins, Compliance Team Attorney, at (646) 428-3810 or at John.Collins@ed.gov; or me, at (646) 428-3806 or at Felice.Bowen@ed.gov.   If following this conversation you still have concerns, you may send a written request for reconsideration to the New York Office's Director, Timothy C.J. Blanchard, at the address indicated above, within 60 days of the date of this letter. While you are encouraged to do so, having a discussion with the case team members or me about OCR's determination is not a prerequisite to filing a request for reconsideration with the Director, and it does not stop the running of the 60-day timeline.

Should you decide to file a request for reconsideration, be as specific as possible.   Your correspondence should focus on factual or legal concerns that you believe may change the determination.   You should explain why you believe the determination was incorrect, i.e., why the factual information was incomplete, the analysis of the facts was incorrect, the legal standard was not applied correctly, and/or the incorrect legal standard was applied. The Director will respond in writing.

Very truly yours,

Félice A. Bowen

Félice A, Bowen
Compliance Team Leader

Document 2

Robert Williams
624 East 222nd Street
Apt. 6A
Bronx, NY 10467


UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
32 Old Slip Road, 26th Floor
NEW YORK, NY 10005


November 7, 2009


RE: REQUEST FOR CONSIDERATION Case No. 02-09-2088
   **City University of New York, Brooklyn College**


Dear Mr. Timothy C. J. Blanchard-New York Office's Director,


   I submit this following request for reconsideration for the following reasons. The

investigation performed by this Civil Rights Office is inadequate, unworthy, unprofessional and

it strays from being impartial. The recipient clearly has manipulated this agency and OCR has

presented a determination that clearly lacks intelligence. Any investigation significantly one that

involves Civil Rights must be decided on established policies that apply, these policies must not

be verbalized away on why the language of the policy was not followed. Moreover, policies are

the rules and guidelines that assure a framework of civility, fairness and equality. This insures

that the Civil Rights of an individual are not compromised, just as in sports there are rules, these

rules do not change on a capricious idea or during the course of the game.  All students are

entitled to an "equal educational opportunity" any action or inaction that undermines this

threshold is sufficient for a recipient to be held liable.


1

This request for reconsideration will address the determination by this Civil Rights Office based on the following. The factual information is incorrect and applied incorrectly. The factual information is incomplete and analyzed incorrectly. The legal standard used was applied incorrectly and the incorrect legal standard was applied. **Please Note:** I will refer to myself ("hereinafter") as the complainant.

## LEGAL STANDARD

There is no dispute that the complainant satisfied the four steps of analyzing retaliation: (1) the complainant engaged in protected activity; (2) the recipient was aware of the complainant's protected activity; (3) the complainant suffered and adverse action contemporaneous with, or subsequent to, the recipient's learning of the complainant's involvement in protected activity; and (4) there is an casual connection between the protected activity and the adverse action from which a retaliatory motivation reasonably may be inferred. Once these four steps have been satisfied the recipient must provide a legitimate non- retaliatory reason for the challenged action. However, OCR failed to apply this legal standard correctly, the standard then calls for a shift back to the complainant to demonstrate that the legitimate non- retaliatory reason presented by the recipient is a pretext to hide retaliation. The complainant was not given the opportunity to respond prior to OCR determination. The *McDonnell Douglass* burden shifting framework was applied incorrectly.

OCR also applied the incorrect legal standard that was "material" in their determination. OCR erroneously relies on the "similarly situated" student threshold. Similarly situated does not apply in the retaliation burden shifting framework previously mentioned. Similarly situated is

2

used to determine discrimination: (1) member of protected class; (2) qualified for position in question; (3) suffered an adverse action; and (4) the circumstances surrounding the adverse action give "rise to an inference of discrimination".  The fourth prong then would question similar situated.  This by and large is a factual issue that a jury decides.

Thirdly, when there is a person that admits that they were aware the complainant filed an internal grievance, this then is sufficient and material in nature and cannot be mitigated away because they then claim they were not aware of another grievance filed by the complainant. The knowledge of the second grievance serves no "substantial" function once there is an acknowledgement of the proceeding grievance complaint.


## FACTUAL INFORMATION INCORRECT/ AND APPLIED INCORRECTLY

OCR believes that the complainant submitted a plan and then was given permission to register for the spring 2009 semester. This information is incorrect. The first time that the complainant received notification about an academic stop was during March of the spring semester (spring semesters start during the last week of January until the 1st or second week in May). The March academic stop letter referred to registration for the fall 2009 semester. (See enclosed March 2009 letter). This letter also implies a student must raise their average to the minimum 3.0 and/ or make academic progress towards the 3.0 threshold. OCR believes that the complainant submitted a plan of action to register for the spring 2009 semester. The complainant was only required to submit one plan of action for the fall 2009 semester. (OCR determination suggests that the complainant has forwarded two (2) plans of actions, which is incorrect, based on this there would have to be a plan of action dated during the fall 2008 semester, no such plan exist).

OCR states "a student must increase his or her GPA to 3.0 within the next 9 credits".

Based on this policy the coordinator was in no position to deny the complainant registration for the fall 2009 semester at this stage it was irrelevant what the complainant's final grades would be. (1) The complainant has an "equal education opportunity right" to take 9 credits to raise the GPA; and moreover (2) the complainant has an "equal education opportunity right" to appeal final grades. **PLEASE NOTE:**  In accordance to Brooklyn College policy (see enclosed policy) an academic stop it is not to be used as a punitive policy, it's used to alert students of their standing. The coordinator used it as a punitive measure by denying the complainant access to register for the fall 2009 semester and in retaliation for filing an internal grievance. It is important to consider the coordinator actions at this stage of the complainant's pursuit of his Master's Degree. No matter what the complainant's final grades would be, the complainant had 9 credits starting the next fall semester to raise the GPA and/or make academic progress.

The complainant was to register on May 5th 2009 for the fall 2009 semester, school policy clearly states that once the coordinator receives a plan of action the stop must be lifted, so that the student can register, the coordinator refused to follow school policy and lift the stop. For OCR to suggest since The Acting Graduate Dean lifted the stop in August (one week prior to the start of classes) justifies Civil Rights violations (to register in May 2009) and is sufficient to mitigate school policy is biased. A Civil Rights violation cannot be offset once the injustice has taken place. All the Acting Graduate Dean did was follow school policy just as the coordinator was to by lifting the stop. OCR believes that the Acting Dean by lifting the stop overrides the

recipients Civil Rights violation in May 2009. This rational is illogical, unreasonable and prejudice.

After the complainant's final grades posted in late May and the complainant made academic progress towards the 3.0 GPA, the stop was never lifted and the complainant received notice that " you are deemed as not making academic progress" during July 2009 by the coordinator, which clearly contradicts the March 2009 letter (see enclosed July 2009 letter). As stated previously, the stop policy allows the student to take 9 credits to raise the GPA, the coordinator who admits she was aware the complainant filed an internal race grievance clearly was moving to attempt to dismiss and/ or abandon the student from the program. Hypothetically, if a student has the opportunity to take 9 credits beginning with the following semester, not allowing the complainant to exercise their right to register accomplishes nothing. How can a student raise their GPA, if they are not allowed to register? The coordinators actions are clearly retaliatory.

OCR determination that the coordinator was acting in accordance with the college's procedures cannot be substantiated with independent evidence, no document justifies what the coordinator did. OCR determination is based on statements made by the college, which clearly contradicts the procedural process concerning the academic stop. An investigation must be determined on the established policies (evidence) not on statements that attempt to justify why the recipient did not follow established policies. The focus this agency should pursue is the language of the policy and why it was not followed. This is the "material" avenue if you are trying to protect the complainants Civil Rights.

## FACTUAL INFORMATION ANALYZED INCORRECTLY

OCR has analyzed the recipients academic stop policy erroneously. The language of the policy clearly states "…..A student on academic probation must increase his or her GPA to 3.00 or higher within 9 additional credits. Otherwise, the student **may** be subject to dismissal from the degree or advanced certificate program". The language clearly does not suggest in any form that a student will be dismissed from the program; reasonably there are other factors that are considered. The word may in the policy indicate that the drafters of the policy understood that each student would be reviewed on a case by case determination, before a student is dismissed from the program. Clearly, this policy is not a one size fits all policy, any reasonable person would interpret this policy as "what has the student done since being placed on probation". The policy clearly is designed to use "academic progress" as the determining factor of a student's faith in the program.

The language of the policy adamantly suggests that "…..Academic probation is viewed as a temporary, **non-punitive** status to alert the student" of their position. This also indicates that the intent of this policy is not to punish the student but is designed to work with the student. There is overwhelming evidence that the coordinator used this policy in a punitive and retaliatory manner. No language of this policy supports the coordinators unlawful actions.

## Argument

OCR determination is based on a recipient who clearly did not follow their own internal rules of the game. There is no question the coordinator violated the rules that are designed to provide each and every student on academic probation an "equal education opportunity" to raise their GPA. By default the question then becomes what purpose and/or intention did the

6

coordinator wish to accomplish by her unlawful actions towards the complainant.

Hypothetically, if the complainant received two F's for final grades during the semester the coordinator refused to lift the stop because she claims she was waiting for the final grades to post, her actions would still be unjustified. Moreover, no matter what the final grades would be based on the academic stop policy, the complainant has the right to take 9 additional credits. The complainant does not automatically lose or waive the right to take the additional 9 credits to raise the GPA and/or make academic progress because the coordinator deviated from school policy. Please remember the complainant also has an "equal education opportunity" to appeal to separate committee's about final grades.

The language of the policy does not favor the coordinators actions in any way, shape or form. The coordinators action was premature which leads to retaliatory behavior. First, she refused to lift the stop and indicated she was waiting for the final grades to post before removing the stop. Secondly, once the final grades did post in late May, she still did not lift the stop, abandoning the complainant. Thirdly, in late July she mails the complainant a letter indicating that the complainant did not make academic progress, which is clearly a false statement.

The coordinators actions show a pattern of retaliatory behavior and a retaliatory "state of mind" towards the complainant. It is more likely than not when a internal policy is not followed and there is a paper trail of actions that clearly deviates from the purpose and intent of the policy we can conclude that the "state of mind" of the coordinator at a bare minimum is sufficient to suggest her conduct unlawful.

The coordinator's action was retaliatory in nature and clearly falls within the scope of what defines retaliatory behavior. It was clearly irrelevant what the complainant's final grades would be at the stage the stop was not lifted. There is no reasonable explanation why the stop was not

7

lifted in accordance to the rules, in fact no explanation would justify not lifting the stop. A student has to be in class to raise their GPA. The coordinator's behavior served no purpose and denied and violated the complainant's Civil Rights.

OCR cannot impartially, reasonably and intelligently answer the question what purpose or intention did the coordinator wish to accomplish? When there is nothing that she has shown, proved or could justify why the stop was not lifted.  Moreover, OCR cannot answer the question why the policy was not followed in accordance to the language of the policy; there is nothing the coordinator could accomplish by her actions that could be considered legitimate non-retaliatory.

### CONCLUSION

THE DEPARTMENT OF EDUCATION OFFICE FOR CIVIL RIGHTS has a duty to protect and enforce students Civil Rights. Brooklyn College continues to do what they want to do which clearly strays from established school policies that are designed to follow Federal Law and provide "an equal education opportunity to all its students".  Brooklyn College has just manipulated OCR, as they have tried to manipulate the complainant by not following established policies, the difference is that they are not successful manipulating the complainant.

Policies are designed so that they provide equality to all. Policies cannot be subjectively disregarded significantly, in matters that concern fairness, justice, and Civil Rights. OCR has a duty to be impartial and has a duty to not be moved by actions or statements that cannot be supported by established policies. The complainant had to provide evidence to justify this complaint, based on OCR determination Brooklyn College was not held to the same standard. There is no evidence in the school bulletin that justifies and support the coordinators action, no impartial evidence supports and justifies OCR determination.

8

Your determination is inadequate, unworthy, unprofessional and biased. OCR has based their determination on unfair partiality, compromising the integrity and ethical standards of the DEPARTMENT Of EDUCATION. Your determination stretches the imagination to be considered substantiated.

Thank You

Robert Wiliams

KRYSTAL L. BARBERO
Notary Public, State of New York
No 01BA6166768
Qualified in Bronx County
Term Expires May 21, 2011

Document 3

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

October 5, 2010

Robert Williams
624 East 222nd Street
Apartment 6A
Bronx, New York 10467

Re:    Case No. 02-09-2088
       City University of New York – Brooklyn College

Dear Mr. Williams:

This letter is in response to your request, received on December 28, 2009, that the
U.S. Department of Education, Office for Civil Rights (OCR), reconsider its decision to
close the allegation that you raised in the above referenced complaint. Specifically, you
are requesting that OCR reconsider its decision to close the following allegation: the
College's Coordinator for Graduate Studies (Coordinator) did not permit you to register
for classes for the fall 2009 semester in retaliation for your filing of an internal grievance
alleging race discrimination.

As OCR advised you in the closure letter, dated October 30, 2009, a request for
reconsideration of OCR's decision to close allegations must focus on factual or legal
concerns that you believe may change the determination. A complainant seeking
reconsideration should explain why he/she believes that factual information was
incomplete, the analysis of the facts was incorrect, the legal standard was not applied
correctly, and/or the incorrect legal standard was applied.

You alleged that the Coordinator did not permit you to register for classes for the fall
2009 semester in retaliation for your filing of an internal grievance alleging race
discrimination. OCR determined that you filed two grievances alleging race
discrimination, and that the Coordinator was aware of at least one of these grievances.[1]
Further, OCR determined that on April 28, 2009, you attempted to register for classes for
the fall 2009 semester; but you were not allowed to register. OCR determined, however,
that the Coordinator had legitimate, non-retaliatory reasons for not allowing you to
register for classes for the fall 2009 semester on April 28, 2009.

---

[1] In your request for reconsideration, you asserted that whether or not the Coordinator had knowledge of
the second grievance was immaterial. You stated that the fact that she had knowledge of the first grievance
was sufficient to satisfy the prong of the retaliation analysis requiring that the alleged retaliator have
knowledge of the protected activity. You are correct, and OCR stated such in its determination letter.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by
fostering educational excellence and ensuring equal access.*

OCR determined that pursuant to the College's Academic Requirements and Procedures, the College places a student on academic probation if his or her grade point average (GPA) falls below a 3.0. When a student is on academic probation, a probation stop (P-stop) is automatically imposed, which prevents a student from registering for classes. In order to lift the P-stop, a student must meet with the Graduate Deputy/Program Head to develop a plan for raising his or her GPA to a 3.0 within the next nine credits. Once the Coordinator approves this plan, the P-stop is temporarily lifted to allow the student to register for classes for the following semester; however, the P-stop is then reemployed until the student is no longer on academic probation.

OCR determined that at the end of the fall 2008 semester, your GPA fell below a 3.0. Pursuant to the College's procedures, you were then automatically placed on academic probation and a P-stop was automatically imposed upon you, preventing you from registering for classes until you submitted a plan for raising your GPA to a 3.0. OCR determined that you submitted a plan for the spring 2009 semester, which was approved by the Coordinator; and you were then permitted to register for six credits for the spring 2009 semester. OCR determined that on or about April 28, 2009, you requested permission to register for the fall 2009 semester. OCR determined that in accordance with the College's procedures, the Coordinator advised you that the P-stop would remain in place preventing you from registering for the fall 2009 semester until your grades for the spring 2009 semester were finalized; and that if your grades from the spring 2009 semester did not lift your GPA above a 3.0, you would be required to submit a new plan with the Graduate Deputy/Program Head before the P-stop was lifted to allow you to register for the fall 2009 semester.

Based on the above, OCR determined that the Coordinator had legitimate, non-retaliatory reasons for imposing the P-stop that prevented you from registering for the fall 2009 semester on April 28, 2009. Specifically, you were on academic probation; your grades for the spring 2009 semester were not finalized; and if you had not raised your GPA above a 3.0 in the spring 2009 semester, you would need to submit a new plan in order for the P-stop to be lifted to allow you to register for the fall 2009 semester. OCR determined that the proffered reasons were not a pretext for retaliation, because the Coordinator followed the College's procedures for students on academic probation. Further, the Coordinator had treated other similarly situated students in a similar manner.

You requested that OCR reconsider closure of your case. In your request for reconsideration, you stated that OCR was incorrect when OCR determined that you had submitted a plan for the spring 2009 semester. You stated that you were not notified that you were on academic probation until March 2009; that you only submitted one plan; and that the plan you submitted was for the fall 2009 semester.

I reviewed the documentation and interview statements in the case file. While the Coordinator advised OCR that she believed you had submitted a plan for the spring 2009 semester, the documentation indicates that you did not submit a plan for the spring 2009 semester. The documentation on file indicates that the first time you submitted an approved plan was August 17, 2009. Accordingly, OCR's determination letter was

incorrect regarding whether you submitted one or two plans; however, this does not alter OCR's determination that the Coordinator had legitimate, non-retaliatory reasons for not allowing you to register for the fall 2009 semester on April 28, 2009. Specifically, you were on academic probation; your grades for the spring 2009 semester were not finalized; and if you had not raised your GPA above a 3.0 in the spring 2009 semester, you would need to submit a new plan in order for the P-stop to be lifted to allow you to register for the fall 2009 semester.

In your request for reconsideration, you also stated that the requirement that you raise your GPA to a 3.0 in the next nine credits should have applied to the fall 2009 semester and not the spring 2009 semester; because you did not receive the letter stating that you were on academic probation until March 2009. The College's policy clearly states that a student who does not maintain a GPA of at least 3.0 is automatically on academic probation and must increase his or her GPA to 3.0 or higher "within 9 additional credits". It further states that when a student is on academic probation, "a 'STOP' action is taken by the Office of the Dean of Research and Graduate Studies. The probation STOP code bars the student from registration until academic counseling takes place." [emphasis in the original] There is no dispute that your GPA fell below a 3.0 at the end of the fall 2008 semester; accordingly, you were automatically placed on academic probation beginning with the spring 2009 semester. Even though you did not receive your letter notifying you of your academic probation until March 2009, you were already on academic probation as of the beginning of the spring 2009 semester. Therefore, beginning with the spring 2009 semester, you had to raise your GPA to a 3.0 or higher "within 9 additional credits". In accordance with the College's policy, those nine credits began with the spring 2009 semester; not the fall 2009 semester.[2]

In your request for reconsideration, you further asserted that the Coordinator retaliated by not immediately lifting the P-stop after your grades for the spring 2009 semester were posted at the end of May 2009. Documentation on file indicates that you took six credits during the spring 2009 semester, but you did not raise your overall GPA to a 3.0 at the end of the spring 2009 semester; accordingly, you were still on academic probation and needed to submit a plan of action before the P-stop could be lifted allowing you to register for the fall 2009 semester. Documentation on file indicates that you did not submit the plan of action until August 17, 2009; at which time the P-stop was lifted to allow you to register for the fall 2009 semester.

In your request for reconsideration, you further assert that the Coordinator should have lifted the P-stop after she received your plan of action, and she refused to do so.

---

[2] In your request for reconsideration, you also stated that you received a letter in July 2009 stating that you had not raised your GPA above a 3.0 and were still on academic probation. You believed that you should not have received another letter, because the spring 2009 semester classes should not have counted as part of the nine credits that you had to raise your GPA to a 3.0. This argument fails for the same reasons cited above; i.e., you were automatically on academic probation at the beginning of the spring 2009 semester and you had the next nine credits (including classes taken in the spring 2009 semester) within which to raise your GPA to a 3.0.

Documentation on file indicates that you submitted the plan of action on August 17, 2009, and the Coordinator then lifted the P-stop.

In your request for reconsideration, you also argue that OCR should not have considered similarly situated individuals in the retaliation analysis. You believed that considering what happened to similarly situated individuals does not apply in retaliation analysis. In determining whether a reason proffered by a College for actions taken is pretextual, one method of determining pretext is to compare how the College treated similarly situated individuals. OCR correctly utilized this method of comparison in the analysis of your case.

Based on all of the above, I concur with the case team's determination that the Coordinator had legitimate, non-retaliatory reasons for not allowing you to register for the fall 2009 semester on April 28, 2009. Accordingly, there is no reason for OCR to alter its determination in this case.

I hope that the above discussion clarifies OCR's determination in this matter. You may request that the Deputy Assistant Secretary for Enforcement review this decision. If you choose to do so, direct your written response, within 60 days of the date you receive this decision, to:

> Deputy Assistant Secretary for Enforcement
> U.S. Department of Education
> Office for Civil Rights
> 400 Maryland Avenue, S.W.
> Washington, D.C. 20202-1100
> or
> OCRAppeals@ed.gov

Your appeal to the Deputy Assistant Secretary for Enforcement should be as specific as possible, focusing on factual or legal questions that could change the disposition of the case. The Deputy Assistant Secretary for Enforcement will not consider any issues or concerns that were not raised in your request for reconsideration to this Office.

Under the Freedom of Information Act, 5 U.S.C. §552, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personally identifiable information, which if released, could constitute an unwarranted invasion of personal privacy.

Very truly yours,

Timothy C.J. Blanchard

Document 4

Robert Williams
624 East 222nd St.
Apt. 6A
Bronx, NY 10467
robteach2008@yahoo.com


Deputy Assistant Secretary for Enforcement
U.S. Department of Education
Office for Civil Rights
400 Maryland Avenue, S.W.
Washington, D.C. 20202-1100

December 1, 2010

**RE: Case No. 02-09-2088**
     **City University of New York, Brooklyn College**

Dear Deputy Asst. Secretary for Education,

This letter enclosed with appendix is to address and give OCR the opportunity it deserves to correct the determination from the New York Office. I am a strong believer in Civil Rights and believe that I have a duty to exhaust my administrative opportunities not only for myself but for students that will follow and might find themselves involved in this similar "injustice". In short, OCR has one more opportunity to get it right and deserves to correct an internal determination.

I will not present a long-winded letter but I believe if you read the original determination from OCR (Appendix Document # 1), my request for reconsideration (app. doc. # 2) and finally the response from the Director of the New York Office (app. doc. # 3) you will be able to understand both arguments and among other things the legal and factual flaws that inadvertently support unlawful retaliation.

The legal analysis that is used to assist in deciding retaliation; (1) engaged in protected activity; (2) the awareness of protected activity; (3) adverse action; and (4) casual connection between protected activity and adverse action.

There is no question that I met this burden pursuant to this burden I should be given the opportunity to demonstrate that the non-discriminatory  reason used was a pretext to cover unlawful retaliation. Moreover that is how the federal courts help determine if there is unlawful activity. The complainant meets the four prong analysis mentioned above, then the recipient is given the opportunity to demonstrate a non-retaliatory business decision and if they meet this burden it then shifts back to the complainant to demonstrate that the recipient is lying to cover unlawful actions. I was not given that opportunity; I do realize that perhaps OCR does not investigate under this complete and full analysis and if so I move on.

Page 2 - Robert Williams

Notwithstanding, the other erroneous legal conclusion is the fact that OCR used a "similarly situated prong that is not used to demonstrate if unlawful retaliation has occurred. Similarly situated is used in the prong analysis to determine if there is an inference of unlawful discrimination.

OCR claims that similarly situated students received the same treatment that I received, moreover how many of these students were involved in protected activity. Other words how many complained of discrimination and was involved in protected activity. In short, none of these students were similarly situated as I. Additionally, I was involved in protected activity therefore, I should have not been considered with the general population. The college had a duty to make sure there was no adverse action towards me.  Please bear in mind as stated, similar situated is not an analysis prong for retaliation and based on the legal analysis that decides retaliation it could be determined that I was retaliated against.

OCR has also made a factual erroneous conclusion that shifts OCR from being impartial. The underlying intent of the academic probation stop is based on academic progress and being non-punitive. Students are allowed to take up to nine credits once they are placed on probation, if a student does not reach the 3.0 GPA the students does not automatically face dismissal, a student may  face dismissal but no language indicates that the student will be dismissed, the policy is non-punitive.

Furthermore, OCR fails to realize that the Director cannot factually support his findings within the language of the nine credits that he admits a student is allowed to take under the language of the policy. (App. doc. # 3 page 3 paragraph 2). Pursuant to the Director's findings I was only allowed to take six credits therefore I should have been allowed to register at my appointed time simply because I had three more credits to take to help raise the GPA. In addition the language of the policy only gives the coordinator the authority to be satisfied with the student's plan of action, waiting for the posting of final grades to post is not within her jurisdiction.

Having been placed on probation for the first time at the end of the fall 2008 semester (this is after the semester was over and my two final grades of C were posted). Therefore, starting with the spring 2009 semester I registered and took two classes (6 credits). (App. doc. # 4). At this point I still have three credits left to fulfill the nine credit threshold.

Before the end of the spring 2009 semester it was time for me to register for the fall 2009 and was told that I had to wait for my final grades to post, which cannot be supported by the nine credit policy and undermines my nine credit threshold. Additionally once the final grades posted the Coordinator still did not lift the stop. The Director's conclusion is fundamentally flawed pursuant to the nine stop policy; he fails to realize that under his analysis I have only attempted six credits up to the time I was to register for the fall 2009 semester. (App. doc. # 3 paragraph 3).

The Director also erroneous fails to realize that when I was allowed to register on August 17, 2009, classes for the fall 2009 semester were to start on or around August 24, 2009. At

Page -3 Robert Williams

this time the coordinator had never lifted the stop almost two months after the posting of the spring 2009 final grades. (App. doc. # 5).

The Director believes that the coordinator never lifted the stop on August 17, 2009. I had to ask the Assistant Graduate dean Geraldine Faria who received my plan of action and lifted my stop later on the morning of August 17, 2009, which allowed me to register for two classes which one of these two classes would give me the remaining three credits from the spring 2009 academic stop   to help raise the GPA. (App.doc. # 6).

In sum, the Coordinator did not lift the stop and allow me to register for the remaining three credits that I was entitled to take, she claimed she had to wait for the posting of the final grades meanwhile when the final grades posted she still did not lift the stop and by now she was well aware that there was an investigation about retaliation against her.

Pursuant to the Coordinator's actions towards me, the language of the academic stop policy, the Director's flawed legal and factual determinations that apparently undermines the Civil Rights that I am entitle to and the efficiency of The Department of Education, I respectfully ask and request that this OCR determination correct an injustice not just for me but for all of the other student's that will eventually come after me.

If you have any questions, concerns or clarifications please do not hesitate to contact me.


Respectfully

Robert Williams